UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
VINCENT STRAUTMANIS,                                  :
                                                      :
                          Petitioner,                 :
                                                      :
        -against-                                     :
                                                      :         06 CIV 02571
UNITED STATES OF AMERICA,                             :         Opinion & Order
                                                      :
                          Respondent.                 :
------------------------------------------------------X

WOOD, U.S.D.J.:

Petitioner Vincent Strautmanis ("Petitioner"), acting pro se, brings this petition for habeas corpus pursuant to 28 U.S.C. § 2255 ("Section 2255"), asking the Court to vacate, set aside, or correct his sentence on the grounds that: (1) his trial counsel provided ineffective assistance; (2) his guilty plea was unlawfully coerced; and (3) the Government failed to produce certain discovery material.

For the reasons set forth below, the Court DENIES Petitioner's habeas corpus petition.

I.      Background

On February 3, 2004, a grand jury in the Southern District of New York indicted Petitioner and three co-defendants on a charge of conspiracy to commit bank fraud in violation of 18 U.S.C. § 371 and in violation of 18 U.S.C. § 1344. The indictment charged that in August 2001, Petitioner, who was a registered agent of Weatherly Securities Corporation., opened an account at Weatherly Securities in the fictitious name of Alan Winston (the "Winston Account"). According to the indictment, one of Petitioner's co-conspirators who worked at JP Morgan Chase Bank then transferred approximately $950,000 from JP Morgan to the Winston Account. Two weeks later, Petitioner transferred the money into two different accounts in Jamaica, which

1

were controlled by another co-conspirator. That co-conspirator then issued a $50,000 check to Petitioner.

On March 31, 2005, Petitioner pled guilty to one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 371. At his plea hearing, Petitioner stated that in 2001 he had become acquainted socially with an individual named Robert Cassens. At Cassens' request and direction, Petitioner had prepared a letter on the letterhead of Wall Street Capital Partners, LP, a company Petitioner owned, stating that Petitioner had known Alan Winston for three years, and that Winston had a substantial account with the company. In fact, Petitioner explained at his hearing, he did not know anyone named Alan Winston. Petitioner stated that Cassens used the letter to create false credit for Winston.

Petitioner explained that he then opened the Winston Account, and that several days later, $950,000 was wired into the Account and then wired in two installments to accounts in Winston's name in Jamaica. Several weeks later, Petitioner received $50,000 from Cassens. A year later, Cassens told Petitioner that the United States Attorney's office was questioning him about the transfer, and that Cassens was trying to protect Petitioner. Petitioner stated that he participated with Cassens in trying to concoct a story to conceal their activities. At his plea hearing, Petitioner stated that he knew his conduct was wrong and that it was undertaken to assist Cassens in illegal activities. He also admitted that at the time he received money from Cassens, he knew that it had been obtained improperly, and that he later learned the money was stolen from JP Morgan.

In his plea agreement, Petitioner agreed not to ask the Court for a sentence outside of the stipulated Sentencing Guidelines range of thirty-seven to forty-six months.

On September 21, 2005, this Court sentenced Petitioner to twelve months and one day in prison. Petitioner did not appeal.

In December 2005, Petitioner sent a letter to the Court suggesting that his guilty plea may not have been voluntary. In the letter, Petitioner stated that he had pled guilty only because his lawyer had told him that he would likely be found guilty and could receive an eight-year sentence. Petitioner also claimed that an "original" version of the letter he wrote for Cassens existed, which the Government had not produced. Petitioner indicated that the original letter was less incriminating than the version produced. In addition, Petitioner asserted that the Government had failed to produce certain audio tapes to him until forty-eight hours before his plea bargaining deadline, and that the Assistant U.S. Attorney had pressured him to plead guilty by telling him that if he did not plead, the Government would file additional charges against him, which could result in an eight-year sentence.

On December 29, 2005, the Court held a hearing to address Petitioner's letter. At the hearing, Petitioner stated that he had not appealed his sentence because he had not heard the Court's instructions at sentencing about his right to appeal. Petitioner asserted that he was hard-of-hearing and that his counsel had not informed him of his appeal rights. The Court informed Petitioner that because his deadline to appeal had passed, he could challenge his sentence only through a habeas corpus petition pursuant to Section 2255.

On April 3, 2006, Petitioner filed the instant petition for a writ of habeas corpus. Petitioner requests that the Court vacate, set aside, or correct his sentence on the grounds that: (1) his trial counsel rendered ineffective assistance; (2) his guilty plea was unlawfully coerced; and (3) the Government failed to produce certain discovery material.

II.	Analysis

　　A. Section 2255's Requirement of an Evidentiary Hearing

Section 2255 requires that the court hold an evidentiary hearing on a prisoner's claim, unless the motions and records in the case establish that the petitioner is not entitled to relief. "It is within a district court's discretion to determine whether an evidentiary hearing is warranted." Bennet v. United States, 2004 WL 2711064, at *3 (S.D.N.Y. 2004). While a court should not summarily dismiss a case unless it is clearly bereft of merit, an evidentiary hearing is not needed in every case. Id.; see also Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001). To obtain a hearing, "a petitioner 'must demonstrate a colorable claim,' and the court must evaluate whether a hearing would 'offer any reasonable chance of altering its view of the facts.'" Bennet, 2004 WL 2711064, at *3 (quoting Chang, 250 F.3d at 84, 86).

　　B. Ineffective Assistance of Counsel

Petitioner asserts four bases for his claim of ineffective assistance. First, Petitioner claims that counsel's performance was ineffective because counsel did not inform Petitioner of his appeal rights. Second, Petitioner asserts that counsel did not protect Petitioner's right to discovery materials. Third, he claims that counsel coerced him into pleading guilty, even though counsel knew Petitioner was innocent. Finally, Petitioner asserts that counsel failed to move for withdrawal of Petitioner's guilty plea after the Court purportedly excluded much of the Government's evidence

The Court holds that none of Petitioner's arguments give rise to a colorable claim of ineffective assistance of counsel. The Court thus dismisses Petitioner's ineffective assistance of counsel claim without an evidentiary hearing.

1. <u>Legal standard</u>

To prevail on a claim for ineffective assistance of counsel, a defendant must demonstrate that: (1) his counsel's performance "fell below an objective standard of reasonableness;" and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984). If a defendant makes an inadequate showing on one prong of the <u>Strickland</u> inquiry, the court does not need to address the second prong. <u>Id.</u> at 697.

Under the first prong of the <u>Strickland</u> test, "judicial scrutiny of counsel's performance must be highly deferential." <u>Id.</u> at 689. There is a "strong presumption that [a lawyer's] conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689.

2. <u>Application</u>

a. <u>Petitioner's appeal rights</u>

Counsel has a constitutionally imposed duty to consult with a defendant about the defendant's appeal rights when: (1) there is reason to think that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal); or (2) the defendant reasonably demonstrated to counsel that he was interested in appealing. <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 480 (2000). Where one of these conditions is met, counsel's failure to consult with the defendant about appeal constitutes ineffective assistance. <u>Id.</u> at 479-80. In determining whether counsel has a duty to consult, "courts must take into account all the information counsel knew or should have known." <u>Id.</u> at 480. The Supreme Court has identified a number of factors that are relevant to determining whether a duty to consult existed, including: (1) whether conviction follows a trial or a guilty plea, "both because [a plea] reduces the scope of potentially appealable issues, and because [it] may indicate that the defendant seeks to end [the case]"; (2)

whether the defendant received the sentence bargained for as part of the plea; (3) whether the plea agreement included a waiver-of-appeal provision; and (4) whether counsel believes that there are nonfrivolous grounds for appealing defendant's conviction. Id. at 479-80.

Here, counsel did not have a duty to consult with Petitioner about his appeal rights. Petitioner does not claim that he ever indicated to counsel that he wanted to appeal his sentence. Petitioner pled guilty, and made a detailed statement at his plea hearing in which he admitted guilt and took responsibility for his actions. Counsel has submitted an affidavit stating that he believed Petitioner's admission of guilt. The Court imposed a sentence substantially below the stipulated Sentencing Guideline range, even though Petitioner did not ask the Court for a downward departure. In addition, in the plea agreement included a waiver-of-appeal provision. In these circumstances, it was reasonable for counsel to conclude that: there were no nonfrivolous grounds for appeal; a rational defendant would not want to appeal his sentence; and Petitioner did not wish to appeal. Therefore, counsel's failure to inform Petitioner of his appeal rights does not render counsel's assistance ineffective.[1] The Court DENIES Petitioner's petition for relief based on this ground.

### b. Discovery materials

Petitioner asserts that counsel provided ineffective assistance with respect to discovery because counsel did not obtain from the Government the original letter that Petitioner wrote for

---

[1] Petitioner contends that he has a hearing impairment and thus did not hear the Court's instructions at sentencing regarding his appeal rights. Petitioner claims that counsel knew of his impairment and rendered ineffective assistance by failing to repeat the Court's instructions on appeal. Counsel has submitted an affidavit stating that Petitioner never informed counsel that he had a hearing impairment, and that counsel had no reason to suspect that Petitioner could not hear what was transpiring during court proceedings. The Court has no reason to disbelieve counsel's sworn statement. There is no evidence on the record to indicate that Petitioner had a hearing problem. Petitioner never mentioned his impairment to the Court. At his plea hearing, Petitioner informed Magistrate Judge Dolinger that he was able to understand what was being said to him. Because counsel did not know about and had no reason to know about Petitioner's hearing impairment, counsel did not render ineffective assistance by failing to repeat the Court's instructions to Petitioner.

Cassens. In its response, the Government states that it did not have the letter, and Petitioner does not claim that there is any evidence to the contrary. An evidentiary hearing, therefore, is unlikely to produce any additional evidence to support Petitioner's claim. The Court accepts the Government's statement that it did not have the letter. Counsel cannot be expected to obtain from the Government evidence that the Government did not have. Accordingly, counsel's failure to obtain the letter does not render his performance ineffective.

Petitioner also claims that counsel was ineffective because he failed to object when the Government produced audio tapes to the defendant only forty-eight hours before the Government's plea bargaining deadline. It is not clear, however, on what ground counsel could have objected to the production. At the time of the plea bargain, the Court had not set any deadlines for production of the tapes or any other evidence. The Government had an on-going obligation to produce exculpatory evidence as it was discovered. Petitioner does not argue that the tapes were exculpatory, but even if they were, the Government produced them to Petitioner. Counsel, therefore, did not have a basis for objecting to the timing of the production of the tapes, and counsel's failure to object was not unreasonable.

Accordingly, the Court DENIES Petitioner's motion for relief on the ground that counsel provided ineffective assistance with respect to discovery.

### c. Decision to plead guilty

Petitioner claims that counsel provided ineffective assistance because he permitted Petitioner to plead guilty even though he knew Petitioner was innocent. Counsel has submitted an affidavit stating that he did not believe Petitioner was innocent at the time of the plea bargain, and that he has never had any reason to doubt Petitioner's admissions of guilt. At the plea hearing, counsel stated to the Court that he knew of know reason why the Court should not

accept Petitioner's guilty plea. Petitioner has not identified any evidence that would suggest that counsel's statements at the plea hearing or in his sworn affidavit are false. An evidentiary hearing, therefore, is unlikely to produce any additional evidence on this issue, and the Court accepts counsel's statements as true. See Chang, 250 F.3d at 85-86 (stating that courts can decide a Section 2255 case on the basis of the record and affidavits from trial counsel, without an evidentiary hearing). Petitioner has not established that counsel allowed Petitioner to plead guilty despite knowing that he was innocent.

     Petitioner also argues that counsel coerced Petitioner into pleading guilty by telling him that he could receive an eight-year sentence if he went to trial. The Court has already established that counsel had no reason to disbelieve Petitioner's admissions of guilt. The Government also had stated its intention to charge Petitioner with money laundering if he did not plead guilty, which could have resulted in an eight-year sentence. Counsel, therefore, did not render ineffective assistance by encouraging Petitioner to plead guilty, and informing Petitioner that he could be sentenced to eight years if he did not do so. See Lebron v. Sanders, 2008 WL 793590, at *26 (S.D.N.Y. March 25, 2008) ("it is well within the reasonable range of professional assistance for Petitioner's trial lawyer to discourage him from going to trial"); Baez v. Portuondo, 1999 WL 292573, at *1 (S.D.N.Y. May 7, 1999) ("Defense counsel's decision to recommend that petitioner accept a favorable plea was well within the range of tactical strategy left to the professional judgment of defense counsel."); United States v. Apollo, 1997 WL 615008, at *4 (S.D.N.Y. Oct. 6, 1997) ("advising plaintiff to plead guilty alone does not rise to the level of ineffective assistance of counsel").

d. Withdrawal of guilty plea

Petitioner asserts that counsel provided ineffective assistance because he did not move to withdraw Petitioner's guilty plea after the Court purportedly excluded most of the Government's evidence. (Petition ¶ 12(d)). The Court, however, never excluded any of the Government's evidence against Petitioner. It is possible that Petitioner is referring to the fact that the Court gave him a sentence that was significantly lower than sentence he would have received pursuant to the Sentencing Guidelines. In giving Petitioner a lower sentence, however, the Court did not exclude, or even question, the Government's evidence or Petitioner's guilty plea. Rather, the Court found that factors external to the evidence, such as Petitioner's lack of any prior criminal history and other factors enumerated in 18 U.S.C. § 3553(a), merited a sentence below the Sentencing Guidelines' range. Thus there is no factual basis for Petitioner's claim. In addition, Petitioner does not indicate that he ever told counsel that he wanted to withdraw his plea. Counsel's failure to move to withdraw the plea, therefore, does not constitute ineffective assistance. The Court DENIES Petitioner's petition for relief on this ground.

C. The Government's Conduct Regarding Defendant's Guilty Plea and Discovery

The Court holds that Defendant is barred from arguing that the Government unlawfully coerced his guilty plea, or that the Government failed to produce discovery material, because Petitioner did not raise these claims on direct appeal. In any event, Petitioner's arguments are without merit.[2]

---

[2] Petitioner argues that the Government unlawfully coerced his guilty plea by threatening to charge him with money laundering if he did not plead guilty. It is firmly established that a prosecutor can, during plea negotiations, state an intention to bring additional charges against a defendant, as long as the prosecutor has probable cause to believe that the defendant committed the offense. Perilli v. United States, 2005 WL 1162914, *1 (E.D.N.Y. 2005). Given the allegations against Petitioner, the Government did not unlawfully coerce Petitioner by threatening to bring money laundering charges against him. Petitioner also argues that the Government committed discovery violations by failing to produce the original letter and by producing tapes only forty-eight hours before the plea bargaining deadline. The Court has already determined that these claims are without merit.

1. Legal Standard

A defendant cannot litigate under Section 2255 claims that he could have raised but did not on direct appeal, unless the defendant can show either: (1) cause and prejudice for the failure to raise the claim; or (2) that the defendant is actually innocent of the crime for which he was convicted. Bousley v. United States, 523 U.S. 614, 622-23 (1998). To establish cause for a procedural default, a petitioner must show that "something external to the petitioner, something that cannot be fairly attributed to him" caused the petitioner's failure to raise the claim on direct appeal. Coleman v. Thompson, 501 U.S. 722, 753 (1991). "For example, a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . would constitute cause under this standard." Id. A defendant can show cause by establishing that counsel provided ineffective assistance. Id.

To show that he is "actually innocent," a petitioner must show "factual innocence, not mere legal insufficiency." Bousely, 523 U.S. at 623. The petitioner must demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Id. (internal quotation marks omitted).

2. Application

Petitioner did not pursue direct appeal. Accordingly, Petitioner must show (1) cause and prejudice or (2) actual innocence, in order to pursue his claims regarding the Government in his habeas petition.³

---

³ Ineffective assistance of counsel claims may be brought in a collateral proceeding pursuant to § 2255, whether or not petitioner could have raised the claim on direct appeal. Massaro v. United States, 538 U.S. 500, 504 (2003).

The Court has already established that Petitioner's counsel did not render ineffective assistance. Counsel's conduct at trial, therefore, does not provide cause for Petitioner's failure to raise his claims on direct appeal.

Petitioner asserts that he did not pursue a direct appeal because his hearing impairment prevented him from hearing the Court's instructions at sentencing regarding his appeal rights. Petitioner's hearing problem is not a factor "external to" Petitioner that can establish cause for Petitioner's failure to pursue a direct appeal. If Petitioner had difficulty hearing during proceedings, he should have informed the Court or his counsel of the problem. Petitioner's counsel has submitted an affidavit stating that Petitioner never told him that he had a hearing impairment, and that counsel never had any reason to believe that Petitioner had difficulty hearing. Petitioner never informed the Court of his impairment. Indeed, at both his plea hearing and sentencing, Petitioner engaged in detailed exchanges with the Court during which he asked and responded to questions. At his plea hearing, Petitioner informed Magistrate Judge Dolinger that he had been able to understand what had been said to him during the proceeding. Neither the Court nor counsel, therefore, had reason to suspect that Petitioner did not understand what was transpiring at these proceedings. Petitioner's alleged hearing impairment does not provide cause for Petitioner's failure to raise his claims on direct appeal.

Accordingly, Petitioner's claims regarding the Government are barred unless Petitioner can show actual innocence. Petitioner states in his habeas petition that he "was innocent," but he does not point to evidence that could substantiate this claim. An evidentiary hearing on the issue of Petitioner's actual innocence is unwarranted. In his habeas petition and an earlier letter to the Court, Petitioner seems to indicate that the original letter he claims to have written for Cassens might be less incriminating than the version of the letter that the Government produced. Even if

11

this was the case, however, there is no evidence that would undermine the essential elements of the case against him, including Petitioner's admissions at his plea hearing that he (1) wrote the letter knowing it would be used to help create false credit for Winston; (2) opened an account in Winston's name; (3) helped transfer $950,000 from that account to accounts in Jamaica; (4) accepted $50,000 from Cassens, even though he knew that the money had been obtained illegally and later learned that it had been stolen; and (5) helped Cassens develop a story to conceal the fraud once the investigation began.  Even if the original letter was available, therefore, Petitioner has not shown that he could show that "no reasonable juror would have convicted him." Bousley, 523 U.S. at 622.

Because he has not established cause and prejudice or actual innocence, Petitioner is barred from raising his claims regarding the Government in his habeas petition.  In any event, these claims are without merit.  Accordingly, the Court DENIES Petitioner's motion for relief on the grounds that the Government unlawfully coerced his guilty plea and failed to produce discovery materials.

### III.    Conclusion

For the reasons set forth above, the Court DENIES Petitioner's motion to vacate, set aside, or correct his sentence pursuant to Section 2255.  A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right.  See 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.

The Clerk of the Court is ordered to close this case; any pending motions are moot.

SO ORDERED.

DATED:   New York, New York
         December 7, 2009

                                                    KIMBA M. WOOD
                                                   United States District Judge